UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**ADVOTIS GENERAL TRADING, LLC**

        **Petitioners,**　　　　　　　　　　　　　　Case Number 21-11620

**v.**

**UNITED STATES OF AMERICA,**

        **Respondent.**
_____/

**PETITIONER'S MOTION AND MEMORANDUM OF LAW
TO REQUEST REMISSION OF SEIZED FUNDS**

    NOW COMES Petitioner ADVOTIS GENERAL TRADING, LLC, by and through counsel, Rebecca Castaneda, and pursuant to Federal Rule of Criminal Procedure 41(g), hereby requests judicial intervention and the return of improperly seized funds. In support of their Motion, Petitioner states as follows:

**FACTUAL BACKGROUND**

    1. Petitioner is a trading company based in Dubai, United Arab Emirates that imports and exports throughout the world.[1] Petitioner maintains an office at 104 Bahraini Building, Al Souk Al Kabeer Bur, Dubai.

    2. Petitioner maintains business bank accounts at the National Bank of the Ras

---

[1] Petitioner is registered with the Dubai Department of Economic Department and operates under the license number 854573.

Al-Khaimah ("RAKBank")[2] and Mashreq Bank[3] at their respective Dubai branches. Petitioner uses the RAKBank branch located at the RAK Building, Umm Hurrair Bur Dubai, and the Mashreq Bank branch located at Plot No. A 9-10, Al Farqad Street, Dubai.

    3. Petitioner's accounts are denominated in UAE Dirhams. At the current rate of exchange, one United States dollar equals approximately 3.6 UA Dirhams. Petitioner does not maintain any accounts with banks in the United States and does not maintain any accounts denominated in United States Dollars. Since the United States Dollar is the currency of the World Reserve, when Petitioner internationally sells or purchases items, Petitioner provides the purchase and/or settlement details to its banks, which then complete the appropriate currency exchange.

    4. Petitioner purchases inventory for resale from vendors around the world.

    5. Some of the commodities that Petitioner trades include foodstuff and confectionary items, building materials, home appliances and kitchenware, textiles, sports goods and footwear, pharmaceutical products, cosmetics, and auto parts. Petitioner

---

[2] RAKBank is a bank headquartered in the Emirate of Ras Al-Khaimah, in the United Arab Emirates. The bank provides conventional and Islamic retail, small business, and commercial banking services through a network of 27 branches, all located in the United Arab Emirates. There are no branches or facilities in the United States.

[3] Mashreq Bank is a private banking company that is a privately owned bank in the United Arab Emirates. Mashreq maintains one affiliated branch in New York City. Mashreq Bank Dubai is distinguishable from Mashreq Bank New York as Mashreq Bank Dubai is a retail bank, operating under a UAE charter, serving the general public and business customers of UAE. Mashreq New York is an affiliated but separate bank governed by the banking laws of New York State.

pays the purchases using the settlement instructions from the vendors, which requests United States dollars to be credited to their accounts. To effectuate the vendor requests for wire transfer payments, wire transfer payments require an intermediary bank to complete the transfer.

6. From December 20, 2020, to January 4, 2021, Petitioner's fifteen bank wire transfers, collectively totaling $528,896.00 USD were seized at the guidance and direction of the United States Attorney's Office for the Eastern District of Michigan. The seizures are attached hereto as Exhibit 1. The execution of the seizure warrants were executed by at least one Special Agent of the Internal Revenue Service ("IRS") in the Criminal Investigation Division, Special Agent Derek Newsome ("S.A. Newsome").

7. The wire transfer payments were seized from three intermediary banks after being debited from Petitioners Dubai-based bank accounts. Eleven wire transfer payments were seized via the Citibank account, three were seized via the Mashreq New York Bank Account and one was seized via the Bank of America bank account.

8. Citibank maintains its corporate headquarters in the State of New York and is located at 601 Lexington Avenue, New York, New York, 10022.

9. Mashreq Bank New York is located at 50 Broadway, Suite 1500, New York, New York 10004.

10. Bank of America maintains its corporate headquarters at 100 North Tryon Street, Charlotte North Carolina, 28255.

11. In fourteen of the fifteen seizures, the wire transfers were attempted from

RAKBank and Mashreq Bank to the vendors' banks, where both the sender (Petitioner) and the attempted receiver of these funds are located outside the United States. In the remaining instance, the wire transfer from RAKBank was destined for the bank of a United States vendor in the United States State of Georgia.

12. One such seized wire transfer was a wire transfer of $23,232.00 USD to a company called "Kanin," which is located in India. This transfer was seized when funds were transferred via the United States intermediary bank, Citibank.

13. RAKBank provided Petitioner with a SWIFT teletype message that had been provided to them by Citibank that stated the funds were seized pursuant to a United States Government court order and directed Petitioner to contact Assistant United States Attorney Gjon Juncaj. [*See* Exhibit 2]

14. On or about January 20, 2021, Petitioner attempted to determine the status of the funds. Utilizing information provided by Citibank, Petitioner contacted the United States Government. Petitioner sought clarifications as to the status of this particular wire transfer, the wire transfers that had previously occurred, and the basis for their seizures. Petitioner provided information to the United States Government, summarizing the corporate structure and business activities of Petitioner; this information included documents related to specific invoice, bills of lading and corporate formation documents. [See Exhibit 3A-G]

15. In a January 21, 2021, email, S.A. Newsome responded to Petitioner stating:

    Judicial forfeiture proceedings will be initiated in the United States against the seized funds. Notice of the proceedings will be provided to Advotis and Advotis will have an opportunity to contest the seizure/forfeiture in United States District Court. (*See* Exhibit 4)

16. Also included in the January 21, 2021 email, S.A. Newsome stated:

    I am in receipt of these documents and will review. I may have additional questions in the future; However, you are only referencing one transaction when there were numerous seized by the United States. In the interim, you may provide additional information regarding all seized transactions. As previously, you may wish to provide the following:

    The purpose for each U.S. dollar wire transfer seized by the United States, to include: the names of each beneficiary; a description of the business relationship between *Ahmed Products* and the beneficiary; documents relating to each wire transfer (invoices, bills of lading, etc.); and
    Proof of the lawful origin of each fund wire transferred. (emphasis added)

17. Petitioner retained counsel to effectuate repatriation of the seized funds.

18. Counsel then launched their own efforts to discover if constructive and/or actual notice had been given by the United States as to the status of the funds, as is required by 18 U.S.C. § 983, the Civil Asset Forfeiture and Reform Act of 2000, ("CAFRA"). Counsel's actions included searching www.forfeiture.gov, the public depository of forfeiture actions maintained by the Department of Justice on behalf of itself and all other federal agencies with statutory forfeiture authority. No actual notice was discovered up to and including the date of this filing. [See Exhibit 5] Counsel reviewed open and closed court dockets and pleadings potentially involving Petitioner. Counsel found no civil or criminal actions initiated up to and including the date of this filing. [See Exhibit 6]

19. On or about March 4, 2021, co-counsel, Attorney Dawn Meade,[4] contacted Assistant United States Attorney Gjon Juncaj with the Department of Justice, District of Eastern Michigan, regarding the basis of the seizure and requested court pleadings related to the seizure. Via e-mail, Mr. Juncaj advised that "certain funds were seized pursuant to a federally authorized seizure warrant" and that the court had ordered the warrant to be under seal. [See Exhibit 7] Via telephone, Mr. Juncaj advised counsel that that he would be filing a companion case against the Petitioner within sixty days, but that it would be sealed, and nothing would be unsealed until a later date. Mr. Juncaj also stated that the seizure warrant would be unsealed by Thanksgiving, over eight months later. Mr. Juncaj refused to provide any documentation to Petitioner's counsel.

20. On June 9, 2021, undersigned counsel, Rebecca Castaneda, had a telephone conversation with Mr. Juncaj. Again, Mr. Juncaj refused to provide information necessary for counsel to defend or even understand the case. Mr. Juncaj stated that the business bank accounts at RAKBank and Mashreq Bank were suspicious because they "had a lot of transactions with money coming out, and not a lot of transactions of money going in."

21. At no time prior to the first seizure on December 20, 2020, was Petitioner informed that Petitioner's wire transfers were suspicious or subject to seizure and forfeiture by the United States Government.

---

[4] In addition to counsel of record, Attorney Meade also represents Petitioner.

22. The bankers at RAKBank and Mashreq alerted Petitioner as to the seizures, but the only information Petitioner received from were SWIFT teletype messages that were provided by the intermediary banks. At no time did the seizing agency- the Internal Revenue Service- nor the Department of Justice, District of Eastern Michigan, notify Petitioner that they had seized funds, and notification of any process to challenge that procedure.

## RELEVANT LAW

23. Federal Rule of Criminal Procedure 41 (g) provides:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

24. A Rule 41(g) Motion for the return of property should be granted if the government has no legitimate reason to continue holding the items. *See e.g. United States v. Francis*, 646 F.2d 569, 577 (6th Cir. 1981). The Court must weigh "the legitimate needs of the United States against the property rights of the moving party …" *United States v. Popham*, 382 F.Supp. 2d 942, 955-56 (E.D. Mich. 2005).

25. Other relevant portions of Federal Rule of Criminal Procedure Rule 41, Search and Seizure, include:

> (b) VENUE FOR A WARRANT APPLICATION. At the request of a federal law enforcement officer or an attorney for the government:
> (1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(c) PERSONS OR PROPERTY SUBJECT TO SEARCH OR SEIZURE. A warrant may be issued for any of the following:

(1) evidence of a crime;

(2) contraband, fruits of crime, or other items illegally possessed;

(3) property designed for use, intended for use, or used in committing a crime; or

(4) a person to be arrested or a person who is unlawfully restrained.

(d) OBTAINING A WARRANT.

(1) *In General.* After receiving an affidavit or other information, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device.

(2) *Requesting a Warrant in the Presence of a Judge.*

(A) *Warrant on an Affidavit*. When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge may require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces.

(B) *Warrant on Sworn Testimony*. The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances.

(C) *Recording Testimony*. Testimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit.

(3) *Requesting a Warrant by Telephonic or Other Reliable Electronic Means.* In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means.

(e) ISSUING THE WARRANT.

(1) *In General.* The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

(2) *Contents of the Warrant.*

(A) *Warrant to Search for and Seize a Person or Property*. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

(iii) return the warrant to the magistrate judge designated in the warrant.

(f) EXECUTING AND RETURNING THE WARRANT.

(1) *Warrant to Search for and Seize a Person or Property.*

(A) *Noting the Time.* The officer executing the warrant must enter on it the exact date and time it was executed.

(B) *Inventory.* An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person. In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

(C) *Receipt.* The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property. For a warrant to use remote access

to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied. Service may be accomplished by any means, including electronic means, reasonably calculated to reach that person.

(D) *Return.* The officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

(3) *Delayed Notice.* Upon the government's request, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—may delay any notice required by this rule if the delay is authorized by statute.

26. Additionally, the Civil Asset Forfeiture and Reform Act of 2000, also known as "CAFRA" is codified in 18 U.S.C. § 983 and is an act that revised the civil forfeiture procedures employed by the United States Government prior to 2000. CAFRA was enacted due to perceived abuses of the civil forfeiture provisions of the law, which often led to law enforcement efforts being directed as revenue generating issues, rather than efforts to protect public safety. CAFRA places heavy emphasis on notice, which enables a claimant to adequately pursue judicial remedy for illegally seized or forfeited property. CAFRA requires a 60-day period for the government to notify prospective beneficial owners of seized property to allow them an opportunity to contest the seizure. [*See* 18 USC 1983(a)(1)(A)(i)] Except as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.

27. Further, the Due Process Clause of the Fifth Amendment provides that "no person shall ... be deprived of life, liberty or property without due process of law." This Amendment requires that an individual receives notice and hearing before real property can be seized. *See* <u>United States v. James Daniel Good Real Property, et al.</u>, 510 U.S. 43, 114. S. Ct. 492 (1993).

## ARGUMENT

28. Despite numerous communications and requests to the United States Government, Petitioner remains unable to determine the statutory basis for the seizure of funds; the status of the funds; and the status of any unsealed seizure and/or forfeiture actions taken on behalf of the United States government.

29. The United States has seized $528,896.00 USD from Petitioner. As of the date of this filing, the United States government has retained control of the seized funds for over 180 days, three times the time allowable by statute, and has yet to provide notice to Petitioner of any seizure proceedings. Based upon the communications between Petitioner and S.A. Newsome as well as Petitioner's counsel and Mr. Juncaj, the United States appears to recognize the legal necessity of providing notice to the petitioners. Despite this apparent recognition, the requirements of Federal Rule of Criminal Procedure 41 (f)(1)(C) and (D), and the repeated requests from Petitioner and Petitioner's counsel, the United States has not provided the face of the seizure warrant or a copy of the seizure warrant return to the court.

30. Although Petitioner's telephone numbers, address, and email addresses are readily available to the United States and have even been utilized by S.A. Newsome

to correspond with Petitioner, Petitioner has not been served with the actual required notice of the seizure or forfeiture of these funds, in violation of 18 U.S.C. § 983(a)(1)(A).

31. Pursuant to 18 U.S.C. § 983, notice is not required by the Government if, before the 60-day period expires, the Government files a civil judicial forfeiture action against the property *and provides notice of that action as required by law*. Additionally, no notice is required by the Government if, before the 60-day period expires, the Government does not file a civil judicial forfeiture action but does obtain a criminal indictment containing an allegation that the property is subject to forfeiture. Otherwise, *the Government is required to send written notice to interested parties*, where such notice shall be sent in a manner to achieve proper notice as soon as practicable, and no more than 60 days after the date of seizure. If the Government has chosen to seize funds pursuant to this statute, Petitioner has not still received statutorily required notice.

32. Additionally, upon review of the e-mail communication between Petitioner and S.A. Newsome, it appears that the United States is attempting to establish probable cause *post*-seizure. First, in a January 21, 2021, email to Petitioner, S.A. Newsome is requesting information from Petitioner that would be necessary to establish probable cause to execute a warrant and seize Petitioner's funds. This request for information suggests that the Government lacked probable cause when they obtained the seizure warrant and are trying to "back in" to having the necessary information

to support the probable cause standard, were there warrant to be challenged, as Petitioner is doing now.

33. Second, S.A. Newsome questioned Petitioner in an email on January 21, 2021 regarding "Ahmed Products." (*See* Exhibit 4) "Ahmed Products" is an entity unknown to Petitioner. The inclusion of a question of a completely unrelated company suggests that "Ahmed Products" was another seizure case executed by the Department of Justice, District of Eastern Michigan and the IRS, and that the question was copied from an existing document into the email questioning Petitioner. This suggests that this question is some sort of boilerplate language where the names of companies being scrutinized are inserted into a previously completed document. This approach is problematic because each case, while similar, have unique facts. A boilerplate-type of approach to warrants lacks the specificity required of affidavits in supporting seizure warrants.

34. In addition to the standards required by the United States Code, the seizure and forfeiture of property are also guided by policies of the Department of Justice and Internal Revenue Service. Both of these agencies mandate that any seizure would have to be made under a probable cause standard, and that any forfeiture be made under a preponderance of the evidence. [*See* U.S. Department of Justice Asset Forfeiture Policy Manual, Chapter 2, Section I, Seizure and Restraint Overview;[5] Internal Revenue Manual 9.7.2.7.1, Seizure Warrant, and Internal Revenue Manual

---

[5] Available at https://www.justice.gov/criminal-afmls/file/839521/download (last visited July 13, 2021).

13

9.7.2.7.8, Burden of Proof[6]]. Neither standard has been met in the instant case. Additionally, the Department of Justice and the Internal Revenue Service also have notice requirements which mirror the standard in the United States Code. [US Department of Justice Asset Forfeiture Policy Manual, Chapter 2, Section I, Seizure and Restraint Overview and Internal Revenue Manual 9.7.2.9.3, Time Limitations; "60-day notice is required."]

35. Additionally, since Petitioner has no presence in the District of Eastern Michigan and none of the seized wire transfer payments originated, terminated, or traversed the District of Eastern Michigan, Petitioner challenges the jurisdictional basis for the seizures on the basis of venue. Pursuant to 28 U.S.C. § 1391, Venue Generally (b) —A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.)

There are no facts to support that venue is proper in the District of Eastern Michigan.

---

[6] Available at https://www.irs.gov/irm/part9/irm_09-007-002 (last visited on July 13, 2021).

## CONCLUSION

36. The Government, through its seizures of the subject assets, has de facto seized the business of Petitioner without affording it notice and hearing, in violation of constitutionally mandated due process.

37. Despite numerous requests, neither Petitioner nor Petitioner's counsel have seen or received documentation or notice that supports the seizure of Petitioner's fifteen wire transfers by the United States Government.

38. In addition to violations of procedural due process, the seizure of Petitioner's funds are in contravention to the policies of the Department of Justice and the Internal Revenue Service.

39. Petitioner's efforts to discover any information relevant to the seizures have been fruitless as they have not received the mandatory disclosures required by statute and the Federal Rules of Criminal Procedure.

40. Petitioner is unable to understand any potential charges or the basis for seizure.

41. Petitioner has no information as to the status of the seized funds to protect access to the property and its use in later proceedings.

42. Pursuant to Rule 41 (g) of the Federal Code of Criminal Procedure, Petitioner respectfully requests that this Honorable Court order the return of seized funds. The Government's flagrant disregard of the notice requirements, promulgated by the Civil Asset Forfeiture and Reform Act (CAFRA) and codified under 18 U.S.C. § 983 (a)(1)(A)(i), placed an onerous burden upon Petitioner in discovering

the facts of the case and successfully protecting Petitioner's property, as well as creating substantial hardship on the Petitioner as he does not have access to over $500,000.00 USD of Petitioner's working capital. This conduct should bar the Government from reinstituting this case in any jurisdiction. Petitioners respectfully suggests that the Government's conduct rises to a level that entitles the Petitioner to interest on the sequestered funds as well as to attorney's fees for costs in defending Petitioner's property.

## REQUEST FOR RELIEF

WHEREFORE, pursuant to the above code provisions, and for the reasons stated above, Petitioner ADVOTIS GENERAL TRADING, LLC, requests this Honorable Court enter an Order for the return of $528,896.00 USD to Petitioner; as well as interest, as permitted by statute; and Petitioner's reasonable costs and attorney's fees; and an Order barring the Government from reinstituting this case in any jurisdiction.

Respectfully submitted,

*/s/ Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
The Castaneda Law Firm
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780
rc@attorneyrebeccacastaneda.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been electronically filed on July 13, 2021, with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

<u>/s/ Rebecca L. Castaneda</u>
Rebecca L. Castaneda
Florida Bar No. 1007926
The Castaneda Law Firm
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780
rc@attorneyrebeccacastaneda.com
